### SCOTT *v.* SCOTT.

At common law, the husband, at marriage, became entitled to the wife's personal property as absolutely as if he had purchased it from a third person; but the rule has been abrogated in this state by 1 R. S. p. 321, § 5, and Acts 1853, p. 57, § 5.

The latter enactment is not unconstitutional.

By these statutes, the wife cannot convey her personal property without the consent of her husband; but otherwise she is as fully entitled to the use, possession, and control of her separate personal property as if she were unmarried; and this right exists as against the husband, as well as against the world at large.

The wife may sue her husband in respect of such separate property.

APPEAL from the *Orange* Court of Common Pleas.

WORDEN, J.—Complaint by *Nancy* against *Charles*, alleging, in substance, that on the 31st of *December*, 1856, she intermarried with the defendant; that at the time of the marriage she was possessed, in her own right, of certain articles of personal property, describing them, such as cattle, horses, hogs, chickens, farming implements, household furniture, &c., and that she took the property with her to use as her own; that afterwards, the defendant fraudulently took and converted the property to his own use, and deprived the plaintiff of the use and enjoyment thereof; that the defendant cruelly mistreated and abused her, so that

she could no longer live with him, and was compelled to leave him; that he fraudulently refused to permit her to take away her property, but unlawfully detains the same from her; wherefore, &c.

On motion of defendant, that portion of the complaint was ordered to be stricken out "which refers to the ill treatment of the plaintiff."

The defendant demurred to the complaint, assigning for cause, that the plaintiff had not the legal capacity to sue the defendant, and that the complaint did not state facts sufficient, &c. The demurrer was overruled, and the defendant excepted.

Thereupon, an answer was filed denying the allegations of the complaint, except the marriage.

Trial by jury; verdict for the plaintiff for 251 dollars, 50 cents. Motion for a new trial overruled, and judgment.

The errors assigned are—

1. That the Court erred in overruling the demurrer to the complaint.

2. The verdict is defective in not responding to the issues joined; and,

3. The Court erred in overruling a motion for a new trial.

The first question presented, relates to the sufficiency of the complaint. Before examining the point as to the legal capacity of a wife to sue her husband, we will inquire into her rights respecting the property involved.

At common law, the husband, upon marriage, became entitled to the wife's personal property, as absolutely as if he had purchased it from a third person.

But this rule of the common law has, in this state, been abrogated by legislative enactments. By § 5, 1 R. S. p. 321, it is enacted that "No lands of any married woman shall be liable for the debts of her husband; but such lands and the profits therefrom, shall be her separate property, as fully as if she was unmarried; provided, that such wife shall have no power to encumber or convey such lands, except by deed in which her husband shall join."

By § 5, Acts 1853, p. 57, it is enacted that "The personal

property of the wife, held by her at the time of her marriage, or acquired during coverture, by descent, devise, or gift, shall remain her own property to the same extent, and under the same rules, as her real estate so remains."

We may remark, in passing, that an objection is made to the constitutionality of the latter enactment, on the ground that the title to the act is insufficient. This statute was held to be constitutional in *Wilkins* v. *Miller*, 9 Ind. R. 100. It was so recognized in *Reese* v. *Cochran*, 10 Ind. R. 195, and a number of other cases since decided. Whatever doubt there may have been as to the validity of this enactment, it has been too often acted upon as valid, to permit a reëxamination of the question.

By the latter statute, the personal property of the wife, held by her at the time of her marriage, &c., shall remain her own property to the same extent, and under the same rules, as her real estate so remains. How is it with her real estate? The statute first above quoted answers, that it "shall be her separate property as fully as if she was unmarried." As she cannot convey her real property without the consent of her husband, and as she holds her personal with the same extent of right as her real estate, she cannot convey her personal, without the consent of her husband. *Reese* v. *Cochran*, *supra*. From the foregoing statutory provisions it is apparent that the wife is fully entitled to the use, possession, and control of such personal property as is mentioned in the statute, as fully as if she were unmarried, and this right exists not only as against the world at large, but equally as against her husband. If the husband, or the husband and wife jointly, were entitled to the possession and control of the property, how could the wife's right exist as fully as if she were unmarried? The statute makes such property her own, separate property. In respect to such property, she is entirely independent of her husband, and may possess, enjoy, control, and, in short, do anything with it which she pleases, except to dispose of it without her husband's consent. This is a decided innovation upon the principles of the common law, but we see no other construction that can be properly put upon the

Nov. Term,
1859.

SCOTT
v.
SCOTT.

statutes in question.    This construction is sustained by authority.

In *Darby* v. *Callaghan*, 16 N. Y. Court of Ap. 71, it was held, under statutes not unlike our own, that a married woman, being entitled to a leasehold estate, might bring an action in her own name to recover it.    The Court say (p. 76): " The statute has changed the law, * * * and made all property held by a married woman at the time of her marriage, or acquired by her subsequently, hers absolutely, and has enabled her to use, control, enjoy, and dispose of it, independently of her husband, and as her separate property."

The rights of a married woman to property, under the statute, are very analogous, if not precisely the same as her rights formerly in equity, to property which she may have received by gift, devise, or marriage settlement, to be held " to her separate use."    A Court of equity would always protect her in the enjoyment of such property as against the husband as well as others.

Thus, in *Bennett* v. *Davis*, 2 P. Will. 316, a wife having lands devised to her for her separate use in fee, and her husband becoming bankrupt, the lands were assigned by the commissioners of bankruptcy to one *Davis*, in trust for the creditors.    The husband and *Davis* were decreed to convey to a trustee for the use of the wife.

A more modern case is that of *Anderson* v. *Anderson*, 2 M. and K. 427.    There, a testator bequeathed leasehold property to his daughter for her own and sole use, free of control of any present husband or any husband to come. The daughter was unmarried at the date of the will, and at the death of the testator.    She married without a settlement, and having shortly afterwards separated from her husband, she filed a bill against him, claiming to be entitled to the leasehold property bequeathed to her separate use.    *Held*, that she was so entitled; and a conveyance to the plaintiff, to her sole and separate use, was directed accordingly.

In *Vizonneau* v. *Pegram*, 2 Leigh, 183, it was held, that a *feme covert*, *quoad* property settled to her separate use,

is a *feme sole*, and has a right to dispose of all her sepa-
rate personal estate, and the profits of her separate real, in
the same manner as if she were a *feme sole*, unless the
power of alienation be restrained by the instrument creat-
ing their separate estate. The fact that the statutes do
not permit an alienation, by a *feme covert*, of her property
without the consent of her husband, does not in the least
interfere with her right to the possession, use, and control
of it. In many instances she had not the power formerly
to alienate property held by her for her separate use.

Thus, in *Tullett* v. *Armstrong*, 1 Beav. 1, it was held
that if a gift be made to a woman for her sole and sepa-
rate use, without more, she has, during coverture, an alien-
able estate, independent of her husband. If the gift be
made to her separate use, without power to alienate, she
has, during coverture, the present enjoyment of an unalien-
able estate.

Afterwards, in *Bogget* v. *Meux*, 1 Phil. 627, it was
said by the chancellor, that "After the case of *Tullett* v.
*Armstrong*, there can be no doubt about the doctrine of
this Court respecting the property given to the separate
use of a married woman. * * * * The object of the
doctrine was to give a married woman the enjoyment of
property independent of her husband; but to secure that
object, it was absolutely necessary to restrain her during
coverture, from alienation."

Many other cases might be cited, were it necessary, to
show that before the passage of the statutes in question, a
married woman might hold property to her separate use,
independently, and beyond the control of her husband,
without the power of alienation. The statutes seem to
adopt this equitable doctrine in respect to all her property
both real and personal, held by her at the time of her mar-
riage, or acquired during coverture, in the manner specified
in the statute, leaving it hers in all respects as fully as if
she had remained unmarried, requiring only the assent of
the husband to an alienation.

Regarding the plaintiff as being entitled to the property
in question as fully as if she were unmarried, as against

Nov. Term, 1859.

Scott
v.
Scott.

her husband, as well as against all other persons, it remains to inquire whether she can sue him with respect to the property.

Section 8 of the code, provides that "When a married woman is a party, her husband must be joined with her; except,

"*First.* When the action concerns her separate property, she may sue alone.

"*Second.* When the action is between herself and husband, she may sue or be sued alone," &c.

This section seems fully to warrant the suit. This was virtually determined in the case of *Wilkins* v. *Miller, supra.*

It is suggested that this section should be construed to authorize her to sue her husband for divorce and alimony only. We cannot, however, agree to this construction, as it is evident that the legislature intended to permit her to sue her husband or any one else, in respect to her separate property. After the passage of the code, the legislature provided, in effect, that her personal property should be her separate property, and it follows that she may sue her husband or any one else, in respect to it. It is no new thing that a wife may sue her husband in respect to her separate property. *Anderson* v. *Anderson, supra.* As long ago as the time of Lord MACCLESFIELD, it was said by him, in a case concerning a bond given by the wife to the husband before their marriage, "it is unreasonable that the intermarriage upon which alone the bond is to take effect, should, itself, be a destruction of the bond, and the foundation of that notion is, that in law, the husband and wife being one person, the husband cannot sue the wife on this agreement, whereas in equity it is constant experience that the husband may sue the wife, or the wife the husband, and the husband might sue the wife on this very agreement in the principal case." *Cannel* v. *Buckle*, 2 P. Will. 243.

Whether these provisions of the statute are wise and salutary, and calculated to promote the harmony of domestic life, preserve the sacredness of the marriage relation, and promote the real interests of those for whose benefit they were intended, are questions not for the determina-

tion of the Courts. If experience shall prove them to be unwise and impolitic, the body only that enacted, can repeal or modify them.

The demurrer to the complaint was correctly overruled.

The second error assigned, in relation to the insufficiency of the verdict, is based upon the supposition that there were two paragraphs in the complaint. Such is not the case. There was a complaint filed originally, and afterwards an amended complaint was filed, containing the facts in substance as hereinbefore stated. This amended complaint took the place of the original, and was the one upon which issue was joined and the verdict rendered. The verdict seems to be, in all respects, sufficient.

The motion for a new trial was predicated, amongst other things, upon supposed erroneous instructions to the jury. No objection has been pointed out except upon the general question as to the right of the plaintiff to the property, and we think the instructions in this respect right.

It is also objected that there was no proof of a conversion of the property by the defendant. There was proof that the plaintiff had separated from the defendant, and evidence from which the jury might have inferred that he refused to permit her to take her property. We cannot disturb the finding of the jury on the evidence. The plaintiff being entitled to the property, if the defendant refused to permit her to take it away, it follows that she could recover it, or its value. It is the unanimous opinion of the Court, that the judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Collins, J. Cox,* and *J. Payne,* for the appellant.

*C. L. Dunham* and *H. Heffren,* for the appellees.