IN RE THE MARRIAGE OF JOHN H. OSBORNE AND
JOYCE A. OSBORNE

[No. 3-1075A237. Filed November 17, 1977. Rehearing denied January 13, 1978.
Transfer denied April 7, 1978.]

*Marvin L. Komisarow*, of Fort Wayne, for appellant.

*Richard I. Snouffer*, of Fort Wayne, for appellee.

GARRARD, J.—In a marriage dissolution action the husband appeals from that portion of the decree fixing the property rights of the parties and ordering support for their minor child.[1] He asserts that under the facts and circumstances of this case the court's orders are an abuse of discretion. We agree.

At the time of the dissolution the husband was 51 years of age and the wife was 46. They had been married nineteen years. There was one child, a seventeen year old daughter who was a senior in high school. At the time they were married the husband had some $5000 in assets. The wife had about $900 and a quantity of household utensils and furnishings. Both were employed throughout the marriage except for a three year period when the wife remained at home. The evidence established the husband's total earnings over the years to be about $115,000 and the wife's about $90,000. At the time of trial the husband earned approximately $18,000 per year. At that time the wife's salary had been recently increased to $20,000 per year. She also had previously received discretionary bonuses which were dependent upon her employer's profitability. She had a vested interest in a profit sharing retirement plan valued at approximately $9000. At retirement age the husband would be entitled to benefits under the Railroad Retirement Act.

While the evidence of values is somewhat in conflict, it was established that at the time of trial the parties owned a residence with a net value of $20,500, household goods and antiques valued at $3500, a boat and trailer valued at $3500, jewelry valued at $760, a 1973 Buick apparently worth $1000, a 1969 Pontiac apparently worth about $700, corporate stock worth $280 and cash in various banks and savings and loan companies in the sum of approximately $11,370. Some four months prior to the final separation, the husband's mother died intestate. As a result he was the owner of two certificates of deposit totalling $12,000 which had been issued jointly with right of survivorship to him and his mother. Admittedly, the funds represented by these

---

1. An assignment in the motion to correct errors concerning an award of attorney fees to the wife has been waived since appellant's brief contains no argument concerning it. Indiana Rules of Procedure, Appellant Rule 8.3(A)(7).

certificates had come entirely from the mother. The wife was permitted to testify without objection that while her mother-in-law's estate was still under probate, the husband valued his interest in the estate at between $27,000 and $28,000 apart from the certificates of deposit.

Upon these facts the court awarded the husband the certificates of deposit which had been held jointly with his mother and all other interest in her estate, including 50 shares of stock which had been distributed to him. In addition he was awarded the $3500 boat and trailer, and a checking account at Lincoln National Bank which, according to the testimony, contained $270. The rest of the property, valued at approximately $36,700, was awarded to the wife.[2] To recapitulate, against the $36,700 awarded the wife, the husband was awarded $3770 apart from the assets derived through his mother's death, or about $42,770 including those assets.

It is first asserted that the court erred in giving consideration to the husband's interest in his mother's estate in the property division order. In support of this contention the husband relies upon that portion of IC 1971, 31-1-11.5-11 which provides that in a dissolution action the court "shall divide the property of the parties, whether owned by either spouse *prior* to the marriage, acquired by either spouse in his or her own right *after* the marriage *and prior to final separation* of the parties, or acquired by their joint efforts . . . ." Review of the legislative history of the act discloses that the phrase "and prior to final separation of the parties" was added by the legislature to the final draft submitted by the Civil Code Study Commission Subcommittee on Juvenile Procedure and Dissolution of Marriage. It appears that the legislature intended that property acquired by either spouse in his or her own right *after* the final separation should not be considered a marital asset subject to division.[3] It is the husband's argument that although his mother

---

2. The order apparently failed to expressly dispose of the stocks valued at $280.

3. The writer of 50 Ind. L.J. 541 (1975), *Alimony in Indiana Under No-Fault Divorce*, appears to suggest the contrary although no express consideration is given to addition of the quoted phrase.

died and formal administration of her estate began some four months prior to the final separation of the parties, the undistributed assets of the estate cannot be considered as "acquired" prior to the final separation.[4] We think this an unduly restrictive interpretation of that word in the context of the dissolution act.

The leading Indiana decision, albeit decided under prior law, is *Loeb v. Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349, wherein the court concluded it was not error to exclude evidence of the husband's expectancy in a trust created by his mother. If the husband did not survive his mother, who was living at the time of the divorce, his estate received nothing from the trust. The court held that the husband's interest was a vested remainder subject to a condition subsequent, but that this was *not* the controlling question. Rather, it said,

> "Under the terms of the trust agreement, it should be noted that the defendant has *no present interest of possessory value.* If he should predecease his mother, he takes nothing under the trust. Further, the trustees have no authority to invade the corpus during the settlor's lifetime. The beneficiaries reap no income while their mother is living. Likewise, the defendant husband is *not presently possessed of any pecuniary value which could have been before the trial court for disposition.* The trial court correctly refused to include the remote interest in the property settlement award." (emphasis added) 261 Ind. 193, 199-200, 301 N.E.2d 349, 353.

In the present instance the husband's right of inheritance was fixed upon the intestate death of his mother prior to the final separation.[5] Pursuant to the provisions of the probate code, right to the assets passed to the heirs at the mother's death subject to the possessory rights of the personal representatives and the

4. The husband was a co-administator of the estate. The wife does not alleged that, in that capacity, he wilfully delayed distribution to exclude the inheritance from the marital assets. We therefore need not decide whether such actions, if proved, would require inclusion in the marital estate of assets which would otherwise be excluded. *Cf. McDaniel v. McDaniel* (1964), 245 Ind. 551, 201 N.E.2d 215; and *Wireman v. Wireman* (1976), 168 Ind. App. 295, 343 N.E.2d 292 regarding inclusion of the res of an allegedly fraudulent trust.

5. No argument is advanced regarding the possible discovery of a will and, in fact, both parties have conceded the application of the laws of intestate succession.

statutory charge for the payment of the expenses of administration and other claims and allowances as provided by law. *See* IC 1971, 29-1-7-23, 29-1-13-1.[6] Reserving then the questions of valuation of the estate and what dispositions may meet the standard of "just and reasonable," we conclude that the husband's interest was not so remote as to preclude the court from determining it to have been sufficiently "acquired" prior to the final separation for it to be considered in the distribution of assets. *Loeb v. Loeb*, *supra*. In addition, IC 1971, 31-1-11.5-11(c) would permit the court to hear evidence regarding the inheritance and consider it in connection with its assessment of the economic circumstances of the parties at the time the disposition of the marital assets is to become effective.

Evidence was introduced at trial that the husband valued his interest in the estate (excluding the joint certificates of deposit) at between $27,000 and $28,000, and this value was not disputed. Furthermore, there was no dispute regarding the value of the other major assets.[7] (*Compare, In re Marriage of Miles* (1977), 173 Ind. App. 5, 362 N.E.2d 171, for the effect of imprecise valuations in establishing abuse of discretion.)

Accordingly, the assigned error is reduced to determining whether the court abused its discretion in awarding the property as it did. The standard employed by our appellate courts in such a review is whether the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences that might be drawn therefrom. *In re Marriage of Miles* (1977), 173 Ind. App. 5, 362 N.E.2d 171; *Geberin v. Geberin* (1977), 172 Ind. App. 255, 360 N.E.2d 41.

The statute, IC 1971, 31-1-11.5-11, provides that the property

---

6. We do not consider whether it remains correct to say that *title* to personalty passes to the personal representative. *See, e.g., Helvey v. O'Neill* (1972), 153 Ind. App. 635, 288 N.E.2d 553; *State ex rel. Dept. of Financial Inst. v. Kaufman* (1941), 218 Ind. 74, 30 N.E.2d 978.

7. Except for the checking account at the Lincoln National Bank no question is raised concerning the cash on deposit. Value of the residence and boat were admitted by stipulation.

shall be divided "in a just and reasonable manner." It then continues,

> "*In determining what is just and reasonable* the court *shall* consider the following factors:
>
> (a) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;
>
> (b) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;
>
> (c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;
>
> (d) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;
>
> (e) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties." (emphasis added)

The term "just" as employed in the statute evokes concepts of fairness and equity and of not doing wrong to either party. In this regard we note that the context of the act alters common law and prior statutory notions of the obligations of husbands and wives, both *inter se* and respecting their children. The dissolution act places determinations respecting maintenance [IC 1971, 31-1-11.5-7, 9], child custody [IC 1971, 31-1-11.5-7, 21], child support [IC 1971, 31-1-11.5-7, 12] and attorneys' fees [IC 1971, 31-1-11.5-16] within the sound discretion of the court depending upon the particular facts and circumstances disclosed by the evidence in each case. These provisions accord neither party a presumption or preference based solely upon sex.[8] Indeed, the provision concerning child custody expresses that there shall be no presumption favoring either parent. It would therefore appear that the

---

8. This is not to say that sex has no bearing where under the facts and circumstances there is a rational basis for distinction or preference. But the distinction must arise on such grounds rather than by presumption. *See, also*, IC 1971, 31-1-9-10 *et seq.* which formerly established a duty on the part of a husband to support a dependent wife or children and was amended to provide simply for dependent spouses and children.

legislative intent to be considered in ascertaining what is just and reasonable depends upon the facts before the court and that those facts are to be analyzed essentially without reference to sex.

In turning to the statute it is immediately apparent that a substantial contribution by one spouse under one subparagraph may be largely offset by that of the other spouse under a different subparagraph.

It is equally clear that the enumerated factors provide a basis upon which the trial court may determine that just and reasonable does not necessarily mean equal or relatively equal.

What is less clear is the extent to which the court may consider evidence concerning one of the factors and then within its discretion properly minimize the impact of that factor in achieving its final result. We believe the answer lies in the primary, if somewhat nebulous, mandate that the court must be "just and reasonable." In other words, there must be a rational basis for its action, and when there is none, error is committed. Having so said, we reiterate that in many cases other factors will offset a particular contribution by one spouse and will themselves provide the rational basis. This may occur even though there is no specific offsetting occurrence to point to. Thus, for example, the effect of one spouse bringing a vast amount of property into a marriage must be considered by the court. However, the effect of that contribution may in a given case be largely discounted where the property is consumed by the parties during married life or where it, or its equivalent, is maintained or increased through the efforts of both during many years of marriage. Depending upon the total circumstances it may be just and reasonable in either instance to accord little weight to a particular spouse's initial contribution in determining the final disposition of property.

We return then to the facts at hand. The evidence from the viewpoint favoring the award discloses that apart from the inheritance the spouses' contribution to acquisition of the property was approximately equal. Aside from the inheritance from the husband's mother, there were no

substantial gifts or inheritances by either party. Although the husband had more assets than the wife at the time of the marriage, the overplus represented only about one tenth of the assets accumulated during the marriage and the effect of this contribution could well have dissipated over nineteen years of marriage. The economic circumstances, apart from earnings and earning ability, included the husband's inheritance and about $4000 in employment bonus received and retained by the wife after the separation. There was no evidence of marital conduct on the part of either party relating to disposition or dissipation of their property. At the time of the dissolution the earnings and earning ability of the wife slightly exceeded that of the husband. There was no evidence that the wife had done anything to enable the husband to secure, protect or contribute to either the preservation of his mother's estate or his status as a beneficiary. Of course, the bulk of his intestate share had not been received at the time of dissolution. The amount of this inheritance, some $39,000 roughly equalled the total assets produced from the marriage. It appears to us that under such circumstances, awarding substantially all the marital assets to the wife while reserving the inheritance to the husband was against the clear logic and effect of the circumstances within the mandate that the division should be fair and equitable to each. We, therefore, must reverse that part of the judgment decreeing the disposition of property.

The decree also required the husband to provide support for the daughter. The order required the husband to pay $50 per week for her support while she was not attending college, together with all medical expenses incurred on her behalf in excess of $100 per year. The order further required that the husband "shall provide a college education . . . that he shall pay all the costs and expenses of said college education, including the payment of all tuition expenses, book supplies, room and board, and while said child is attending school shall pay an allowance of Fifteen and no/100 ($15.00) Dollars per week."

We find this order to have been entered against the clear logic and effect of the circumstances. While from the evidence favoring

the judgment we are unable to ascertain whether the $50 per week plus medical expenses would constitute the entire support for the daughter, the order clearly mandated the husband to pay her college expenses without limitation, including room and board and a fifteen dollar per week spending allowance. It does not appear whether the daughter had earnings of her own. It does, of course, appear that at the time of dissolution the wife's earnings exceeded those of the husband and there was no evidence that this would not continue to be true. Moreover, the property division awarded the wife the parties' residence, household furnishings and some $11,000 in cash.

In *Bill v. Bill* (1972), 155 Ind. App. 65, 290 N.E.2d 749, this court reviewed at length the trend in other jurisdictions that in determining matters of child support the court should consider a custodial mother's property and earning ability along with that of the non-custodial father. The case was decided under our previous divorce statute which adhered to the common law principal that, if he was able to do so, it was the exclusive responsibility of the father to support his minor children. (*See*, BURNS IND. ANNO. STAT. § 3-1219 [Repealed]. *See, also*, BURNS IND. ANNO. STAT. § 38-116 which became IC 1971, 31-1-9-10 and was amended by P.L. 292, Acts of 1975 to permit any dependent spouse to obtain provision for his or her support and for that of minor dependent children.) Upon the basis of the statutory mandate and the decision in *Bitner v. Bitner* (1949), 228 Ind. 259, 91 N.E.2d 169, decided under the former law, the court held that the trial court had not erred in refusing to consider the wife's resources in ordering the support for their four children.

As previously discussed in this opinion the legislature has clearly evinced its intent to depart from the *Bill* result in the Marriage Dissolution Act. The act's provision regarding child support, IC 1971, 31-1-11.5-12, states,

"(a) In an action pursuant to section 3(a) or (b) [subsections (a) and (b) of 31-1-11.5-3], the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:

(1) the financial resources of the custodial parent;

(2) standard of living the child would have enjoyed had the marriage not been dissolved;

(3) physical or mental condition of the child and his educational needs; and

(4) financial resources and needs of the noncustodial parent.

(b) Such child support order may also include, where appropriate:

(1) sums for the child's education in schools and at institutions of higher learning, taking into account the child's attitude and ability and the ability of the parent or parents to meet these expenses; and

(2) special medical, hospital or dental expenses necessary to serve the best interests of the child."

A dictum in *Geberin v. Geberin* (1977), 172 Ind. App. 255, 360 N.E.2d 41 indicates that under the dissolution act it does not establish an abuse of discretion if the trial court "ignores" a mother's financial means. To the extent this statement rejects the doctrine applied in some jurisdictions and discussed in *Bill v. Bill, supra,* which holds that a mother should not receive any allowance for child support if she has ample means of her own, we agree that it correctly states the present law of Indiana. However, we wish to clarify the statement. It may not be taken to imply that the court in a dissolution case involving support for minor children may preclude evidence of the factors enumerated in Section 12, or having admitted such evidence, may determine to totally disregard it for a determination based upon sex. To hold otherwise would not affirm a trial court in the proper exercise of its discretion. It would instead permit the court to *refuse* to exercise the discretion provided by the legislative. *City of Elkhart v. Middleton* (1976), 265 Ind. 514, 356 N.E.2d 207, 210-11.

Having examined the record as a whole and the findings entered by the court, we are persuaded that the trial court clearly did not base its order for support upon a discretionary consideration of the potential co-duty of the wife within the meaning of the statute. It appears instead that the order was premised

upon the assumption that it was the father's preliminary obligation to support his child regardless of the economic circumstances of the parties.

We therefore reverse the determinations fixing the property rights of the parties and ordering support for their minor child and remand them for such further proceedings as may be necessary in accord with this opinion.

Reversed and remanded.

Hoffman, J. concurs; Staton, P.J. concurs in result and files separate opinion.

## CONCURRING IN RESULT

STATON, P.J.—I agree with the result reached by the majority that "awarding substantially all the marital assets to the wife while reserving the inheritance to the husband was against the clear logic and effect of the circumstances within the mandate that the division should be fair and equitable to each." However, the majority opinion's treatment of several matters compels me to concur in result only for two reasons.

First, IC 1971, 31-1-11.5-11 (Burns Code Ed., Supp. 1976) sets out five *separate* factors which a trial court shall consider in determining what is a just and reasonable disposition of property. Two of those *separate* factors are:

"(b) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children; ..."

The majority opinion erroneously jumbles these *separate* considerations together by stating that the statute "would permit the court to hear evidence regarding the inheritance and consider it in connection with its assessment of the economic circumstances of the parties at the time the disposition of the

marital assets is to become effective." I do not believe it was the intention of the legislature that the trial court should lift out of context the "economic circumstances . . . at the time of disposition" language and combine it with the reference to inheritance or gift. The two separate considerations were included in the property disposition statute for separate functions.

Before the present dissolution act came into existence, it was customary to completely exclude from consideration the separate property of each spouse. *Scott v. Scott* (1859), 13 Ind. 225; *Wilkins v. Miller* (1857), 9 Ind. 100. Therefore, the reasonable interpretation of the present statute would mandate that subsection (b) be construed as an exclusionary proviso, the exclusion being directly related to *source* of property. Subsection (c) deals specifically with the disposition of the family residence and mandates a consideration of the economic circumstances at the time the disposition is to become effective. A trial court might, *in a given case*, determine how an inheritance has affected the economic circumstances, at the time of final disposition, of the spouse who is to be awarded the marital residence; but, as I shall discuss below, even then the inheritance must be absolutely ascertainable. And, because of case law preceding the enactment of IC 1971, 31-1-11.5-11 (Burns Code Ed., Supp. 1976), I am convinced that the legislature wanted the trial court to justly and reasonably distinguish between true marital assets (fruits of the union) and separate properties of the parties. This conviction is reinforced by the past tense "was acquired," which implies a sorting out, at the time of the divorce, of "his," "hers," and "our" property. By no means should the reference to gift or inheritance be interpreted as a mandate that gifts and inheritance are necessarily subject to property distribution.

Therefore, I agree with the majority that it was against the logic and effect of the circumstances for the trial court to divide the assets by distributing to the husband the "his" property and distributing the "our" property almost exclusively to the wife. The "his" property should not have been considered in portioning *marital assets*.[1] IC 1971, 31-1-11.5-11(b) (Burns Code Ed., Supp.

---

1. There are possible case-by-case exceptions to this rule. If the "non-

1976), would not have been necessary at all except for the source-exclusionary purpose.

The second reason for my concurrence in result relates to the characterization by the majority of the inheritance as "acquired" as of the date of dissolution. Title to personalty does remain in the personal representative throughout the administration of the estate under current law. *State v. Kaufman* (1941), 218 Ind. 74, 30 N.E.2d 987; *Helvey v. O'Neill* (1972), 153 Ind. App. 635, 288 N.E.2d 553. Therefore, the husband had only *some future interest* in the estate, which interest was subject to divestiture by the personal representative for payment of claims against the estate. If we are to say that the husband had sufficiently "acquired" his interest in his mother's estate prior to final separation for that interest to have been considered, then it is basic that we know the value of his interest. We cannot ascertain a value, nor could the trial court.

The majority states that the husband "valued" his interest in the estate (other than the certificates of deposit) "at between $27,000 and $28,000, and this value was not disputed." The record not only discloses a dispute about the value of the husband's eventual share, but it also reveals that the $27,000-$28,000 figures were given by the wife.[2] The husband testified only that there had been no distribution of the estate. His sister, the other heir to the mother's estate, testified that nothing in the estate had been finalized, but that the total estate might be about $79,000. The $79,000 presumably represented a gross estate figure, before claims, administratrix-administrator fees, state and federal income taxes, state inheritance tax, federal estate tax, appraiser's fees, court costs, funeral expenses, and attorney fees are deducted. There may be *some* net estate for the husband and his sister to inherit, but it would be unmitigated folly, from

inheriting" spouse cared for the decedent or the marital assets were used to preserve the expected inheritance, then it would be neither just nor reasonable to exclude the inheritance from the marital estate. Likewise, if the inheritance or gift has been so utilized and commingled by the parties over a number of years as to evade sorting, it has become a marital asset irregardless of source.

2. Depositions were ordered published, but were not in the record.

the record before this Court, to place a dollar amount on the husband's part of that estate.

Like the Indiana Supreme Court in *Loeb v. Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349, I do not believe that the husband was "presently possessed of any pecuniary value which could have been before the trial court for disposition." *Id.* at 353. The husband's *rights to inheritance* were fixed at his mother's death, but intervening variables could diminish the value of the estate before he acquired it. There was no evidence that the statutory time for filing claims had lapsed;[3] there was no evidence even of the amount of the preliminary bond (IC 1971, 29-1-11-1, Ind. Ann. Stat. § 7-501 [Burns Code Ed.]).

The court did abuse its discretion in dividing the marital assets, and the property settlement must be reversed; therefore, I concur in the result.

NOTE — Reported at 369 N.E.2d 653.

---

3. The mother died in January, and the dissolution hearing was in October, but no evidence was introduced as to the date the estate was opened or to the date the first notice to creditors was published. See IC 1971, 29-1-14-1, Ind. Ann. Stat. § 7-801 (Burns Code Ed.).