**David M. TAYLOR, Appellant (Petitioner Below),**

v.

**Carol S. TAYLOR, Appellee (Respondent Below).**

**No. 3–1179 A 324.**

Court of Appeals of Indiana, Fourth District.

May 28, 1981.

Albert C. Hand, Hammond, for appellant (petitioner below).

Rudolph Tanasijevich, Hammond, for appellee (respondent below).

CHIPMAN, Judge.

The marriage of David and Carol Taylor was dissolved on June 15, 1979. David appeals the trial court's valuation of S. G. Taylor Chain Company, Inc. (Taylor Chain) stock and the court's division of the parties' property.

We affirm.

## FACTS

The Taylors were married from 1958 to 1979. At the time of the divorce Carol was 41, suffered from no disabilities and had reenrolled in college to pursue a physical therapy degree. She had been a homemaker for 20 years and, in addition, had worked a couple of short part time jobs. Until January 24, 1979, David, 49, was the president of Taylor Chain and had been earning for several years a gross annual salary of $50,000 to $55,000. On January 24 he was relieved of his duties as president and from February 1, 1979, until the date of the divorce decree, he was paid $3,333 a month by Taylor Chain as chairman of its board although he had no duties or authority. His future employment relationship with the corporation was uncertain. David also received $200 a month as a member of the Board of Directors of the Mercantile National Bank.

The Taylors have three children, Susan, a sophomore at Rice University, Joan, an entering freshman at Denver University, and David, Jr., an 8th grader.

At the time of their marriage, Carol had no major assets. David, on the other hand, owned 5408 shares of Taylor Chain stock, a car, and $10,000. During the marriage David received gifts of 6,892 shares of Taylor Chain stock, 500 shares of Mercantile National Bank stock, and a beneficiary interest in his father's trust.[1] Carol also re-

---

1. In his brief David values this interest at $28,-466.50 but he fails to provide proper citation to the record and we have not found this figure anywhere in the record. In light of our decision to affirm, we will accept this figure as accurate for the purpose of illustrating David's

ceived gifts of 1,942 shares of Taylor Chain stock, and a $4,000 inheritance.

At the time of the dissolution the Taylors owned a $225,000 house with a $60,000 mortgage balance, $6,590 worth of household goods, Carol's $1,400 savings account, David's profit sharing plan worth $27,-873.62, Campbell Chain, Inc. stock worth $300, Carol's 1,942 shares of Taylor Chain stock, family heirlooms valued at $11,440, David's checking account with a balance of $6,512.14, David's investment club valued at $2,000, and several trusts.

Trust number 285700 was established by David naming himself as the beneficiary. It was valued at $81,092 and contained insurance policies and various stocks, including 5,103 shares of Taylor Chain stock. Trust number 362603 was established by David's father with David as a beneficiary. His interest in that trust was valued at $72,168. It too contained numerous stocks which included 4,184 shares of Taylor Chain stock.

Three additional trusts were set up by David to pay for his childrens' college educations and were valued at $17,264.23, $20,-411.25, and $14,315.00. Each trust contained approximately 1,000 shares of Taylor Chain stock as well as other stocks. The corpus of each of these trusts reverted to David upon the childrens' completion of college.

David's father had likewise established trusts for the childrens' (his grandchildrens') college educations. They were valued at approximately $10,000 each and were to terminate on each respective child's 21st birthday with the corpus being turned over to the child.

Carol was awarded custody of the children and David was ordered to pay all of their medical, dental, hospital, and optical bills until emancipation. In addition, David was to pay $80 each week for the support of David, Jr. and $125 a month for Susan and

argument but we remind counsel for *both* parties that we can not consider evidence not in the record and its inclusion in appellate briefs is inappropriate.

Joan during the summer when they were home from college. He was also to pay all of the family's debts, excluding the real estate mortgage, amounting to $29,225.31. The parties were ordered to evenly divide any reversion from the childrens' trusts established by David except for the 3,013 shares of Taylor Chain stock contained in the trusts. If any of this stock remained it was to be solely David's property.

The court divided the other property as follows:

Carol

| | |
|---|---|
| house | $165,000 (net) |
| household goods | 6,590 |
| savings account | 1,400 |
| Taylor Chain stock | 19,420 [2] |
| | $192,410 |

David

| | |
|---|---|
| profit sharing plan | $ 27,873.62 |
| Campbell Chain stock | 300.00 |
| Trust 285700 | 81,092.00 |
| Trust 362603 | 72,168.04 |
| checking account | 6,512.14 |
| investment club | 2,000.00 |
| | $189,945.80 |
| debts | 29,225.31 |
| | $160,720.49 (net) |
| (possible reversion of Taylor Chain stock 3,013 shares) | 30,130.00 |
| | $190,850.49 |

David's share contained 9,287 shares of Taylor Chain stock valued at $92,870.

Custody of the heirlooms was awarded to Carol for future distribution to the three children.

I. VALUATION OF THE STOCK

The trial court entered its findings of fact and conclusions of law pursuant to a request under Ind. Rules of Procedure, Trial Rule 52(A). Therefore, we may not "set aside the findings or judgment unless [they are] clearly erroneous." Taylor Chain is a

2. After hearing conflicting evidence the trial court valued the Taylor Chain stock at $10 per share.

closely held corporation and has not paid a dividend since 1975. It has experienced losses of over two million dollars in the past several years and it has $2,760,000 in liabilities and $2,180,000 in assets. Based on these facts, David's expert testified the corporation was nearly bankrupt and its stock had no value.

Carol's expert disagreed. He explained that if the corporation's inventory was valued by the fifo (first in first out) method rather than by the lifo (last in first out) method, its inventory balance would be increased by $2,200,000. He also pointed out that the corporation continued to employ fully depreciated equipment which originally cost $2,019,000 having a present value of approximately $200,000 which was not reflected by the balance sheet. Lastly he noted the corporation's $2,380,000 in losses could be used to offset future earnings and also made the corporation attractive for acquisition by another business seeking losses to offset income. In his opinion, the stock was worth at least $15 per share and possibly as much as $55 per share if someone sought to acquire the corporation.

 "Clearly erroneous means that, although there is evidence to support the trial court's decision, the record leaves the reviewing court with the definite and firm conviction that a mistake has been committed." (citation omitted) *Young v. Bryan,* (1977) Ind.App., 368 N.E.2d 1, 2. Based on the evidence we are not left with such a conviction. The court's valuation of the stock at $10 a share was not clearly erroneous.

## II. PROPERTY DIVISION

On this issue David argues the court abused its discretion in formulating the property settlement since his share of the assets amounted to less than those assets he had brought into the marriage and that *he* was given during the marriage. Based on

the court's findings, David had $10,000 in cash and $54,080 in Taylor Chain stock[3] upon entering the marriage. During the marriage he received as gifts $68,920 worth of Taylor Chain stock, $12,500 worth of Mercantile National Bank stock, and a $28,466 interest in his father's trust.[4] These gifts and premarital assets totaled $173,966. Since his net share of the assets distributed by the trial court amounted to only $160,720.49, David believes the court's settlement was an abuse of discretion and contrary to law.

Indiana Code 31–1–11.5–11 controls the disposition of property in divorce proceedings.

"31–1–11.5–11. Disposition of property.—(a) For purposes of this section, 'final separation' means the date of filing of the petition for dissolution of marriage under section 3[31–1–11.5–3] of this chapter.

(b) In an action pursuant to section 3(a) [31–1–11.5–3(a)] of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one [1] of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale.

In determining what is just and reasonable the court shall consider the following factors:

(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

---

**3.** For purposes of addressing David's argument we have valued the Taylor Chain stock at today's price although there is no evidence in the record concerning the value of the stock 20 years ago. We also do not have any evidence as to the values of the gifts to David at the time they were made.

**4.** See footnote 1.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property; and

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

(c) When the court finds there is little or no marital property, it may award either spouse a money judgment not limited to the existing property. However, this award may be made only for the financial contribution of one [1] spouse toward tuition, books, and laboratory fees for the higher education of the other spouse."

In light of these statutory considerations we must determine then if the trial court divided the property in a just and reasonable manner.

"In reviewing a division of marital property this Court presumes that the trial court followed the law; that it considered the statutory factors in making its decision.

It is not our function to weigh the evidence nor to substitute our judgment for that of the trial court, rather, this Court's sole duty is to review the record to determine whether the trial court committed an abuse of discretion when it divided the parties' property. Such an abuse of discretion exists only where the award is clearly against the logic and effect of the facts and circumstances before the court." (citations omitted)

*Dahlin v. Dahlin,* (1979) Ind.App., 397 N.E.2d 606, 608. By law the court must divide the property of the parties, whether owned *prior to the marriage,* or acquired by a spouse in his or her own name during the marriage.

Under IC 31–1–11.5–11(b)(2) the court must consider the fact that property was acquired prior to the marriage or as a gift during the marriage.[5] Likewise the court must consider the different economic circumstances of the spouses at the time the disposition of the property is to become effective under subsection (b)(3). These and other considerations are to be balanced against each other.

Although David received large gifts during the marriage and had substantial assets prior to the marriage, in dividing the property the court must also take notice that he is presently earning $3,333 a month and that he is a skilled businessman with 20 years of business experience. Carol on the other hand, is presently unskilled and her future earnings are probably much less than David's. Additionally, during the 20 year marriage each spouse contributed to the acquisition of the property, David as the breadwinner and Carol as the homemaker, having foregone a career outside the home. As noted by the court in *In re the Marriage of Osborne,* (1977) Ind.App., 369 N.E.2d 653, 657,

"[T]he effect of one spouse bringing a vast amount of property into a marriage must be considered by the court. However, the effect of that contribution may in a given case be largely discounted where the property is consumed by the parties during married life or where it, or its equivalent, is maintained or increased through the efforts of both during many years of marriage. Depending upon the total circumstances it may be just and reasonable in either instance to accord little weight to a particular spouse's initial contribution in determining the final disposition of property."

5. The statute only requires the court to consider the various sources of the marital property. It does not require the court to subtract premarital assets, gifts, and inheritances from the marital estate before dividing it. This latter approach is taken by some states, such as Illinois, and is patterned after § 307 of the Uniform Marriage and Divorce Act.

We agree with this reasoning, especially in our case where the parties have been married for 20 years.

The court's distribution of the Taylors' property is not clearly against the logic and effect of the facts and circumstances before the court.

The judgment is affirmed.

MILLER, J., concurs.

YOUNG, P. J., concurs in result.