Michael Joseph WAGNER,
Appellant-Respondent,

v.

Barbara Lohr WAGNER,
Appellee-Petitioner.

No. 3–185–A–11.

Court of Appeals of Indiana,
Third District.

April 15, 1986.

Thomas F. Wagner, Michigan City, for appellant-respondent.

Thomas C. Sopko, South Bend, for appellee-petitioner.

STATON, Presiding Judge.

Michael Joseph Wagner appeals from the trial court's decree dissolving his marriage to Barbara Lohr Wagner, raising five issues:

I. Whether the trial court abused its discretion in fixing the amount of child support;

II. Whether the trial court failed to make a final, just and reasonable distribution of the marital property;

III. Whether the dissolution decree, taken as a whole, so favors Barbara and is so oppressive to Michael as to be an abuse of discretion;

IV. Whether the trial court unreasonably restricted Michael's visitation rights without sufficient evidence and contrary to the stipulation of the parties; and

V. Whether the trial court abused its discretion in ordering Michael to pay Barbara's attorney's fees on appeal.

We affirm.

## I.

### Child Support

The Wagners' marriage was dissolved on October 15, 1984. Custody of the couple's two daughters, Kelly, fourteen, and Shannon, nine, was granted to Barbara. Barbara's net weekly income is $176, and her weekly expenses for raising the two girls are approximately $223. Michael, a salesman who earns a straight commission, had an average net weekly income of $605.50 for the thirteen months prior to the dissolution. This amount includes the couple's $4,000 income tax refund for 1983.

The trial court ordered Michael to pay $222.00 per week for the support of the two girls. The court made additional provisions for certain types of expenses. Through her employment at St. Joseph's High School in South Bend, Indiana, Barbara is able to provide medical insurance for Kelly and Shannon, and the trial court required her to continue doing so. The court also ordered her to pay the ordinary medical, dental, and hospital expenses for the girls which are not covered by the insurance, and ordered Michael to pay extraordinary non-covered expenses. Also, by virtue of Barbara's employment, Kelly is able to attend St. Joseph High School with the annual $1,575 tuition fully waived. Michael was ordered to pay the necessary costs above tuition for Kelly to attend the school, approximately $140 per year. In addition, he was ordered to pay all necessary costs for Shannon to attend St. Anthony's School, including a $50 registration fee, $15 per week tuition, book fees of approximately $65, and $15 to $20 in additional expenses. The parents agreed that the girls should attend parochial school.

In setting the amount of child support, the trial court is guided by Ind.Code 31–1–

11.5–12, which requires the court to consider "all relevant factors including:

(1) the financial resources of the custodial parent;

(2) standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) physical or mental condition of the child and his educational needs; and

(4) financial resources and needs of the non-custodial parent."

The precise determination of the amount is within the discretion of the trial court and will not be set aside absent an abuse of discretion. *In re Marriage of Rupp* (1983), Ind.App., 449 N.E.2d 1164, 1167. Such an abuse occurs only when the trial court's action is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions drawn therefrom. *Inkoff v. Inkoff* (1974), 159 Ind.App. 239, 306 N.E.2d 132, 134.

■ Michael first argues that the trial court erred in considering the $4,000 income tax refund in determining his income, in that the court presumed that he would receive the same refund in future years, and in that such future refunds were property in which Michael had no present interest. Neither ground is persuasive. The trial court merely determined what Michael's average weekly income was at the time of the dissolution, and the $4,000 was in fact a part of that income. Because the income of the parents is always subject to change, child support orders are subject to modification. IC 31–1–11.5–17. If Michael's income decreases in the future, he may petition the trial court for modification of the support order.

■ Michael further argues that ordering him to pay $222.00 per week when Barbara's expenses were found to be $223.00 per week places the entire burden of supporting the children on him, and that in fact such an award requires him to support Barbara as well as the girls, without the requisite findings set out at IC 31–1–11.5–11 for an award of maintenance.

We note first that when the trial court found Barbara's weekly expenses to be $223.00, it further stated that this amount did not represent her total expenses. (Record, at 33). Thus, Michael is not, as he argues, supporting Barbara.

With regard to child support, Michael correctly argues that each parent has an obligation to support their minor children. *See In re Marriage of Osborne* (1977), 174 Ind.App. 599, 369 N.E.2d 653, 658. This does not mean, however, that the financial contributions of both parents must be equal. IC 31–1–11.5–12, quoted above, sets out the factors which the trial court must consider in fixing the contribution of the non-custodial parent. The trial court properly considered and made findings as to the incomes of both Michael and Barbara, the standard of living the girls would have enjoyed had the marriage not been dissolved, their health and educational needs, and other relevant factors such as Barbara's provision of high school tuition and medical insurance through her employment. We find no abuse of discretion.

## II.

### Property Division

Like child support, property division is within the discretion of the trial court, and will be overturned only when clearly against the logic and effect of the facts and circumstances. *Van Riper v. Keim* (1982), Ind.App., 437 N.E.2d 130, 132.

The trial court's property division is as follows:

| MICHAEL | | BARBARA | |
|---|---|---|---|
| $ 2,000 | ½ 1983 Income Tax Refund | $ 2,000 | ½ 1983 Income Tax Refund |
| 375 | ½ Sullair stock | 375 | ½ Sullair stock |
| 4,300 | ½ Certificate of Deposit, Minus Penalty | 5,000 | ½ Certificate of Deposit |
| 2,000 | Furnishings inherited by Michael | 5,000 | Other furnishings |
| 5,000 | Credit Union account | 1,260 | IRA |
| $13,675 | | $13,635 | |

In addition, the parties own the marital residence as tenants in common under the

dissolution decree, with Barbara and the girls allowed to live in it until either (a) both daughters are emancipated or the youngest reaches age 21, (b) Barbara remarries, or (c) Barbara abandons the house as the primary residence for herself and the girls. During this time Barbara and Michael share equally the mortgage payment of $530.00 per month, as well as the cost of insurance, repairs in excess of $100.00, and improvements. Before authorizing improvements or repairs over $100, Barbara is required to give Michael a reasonable opportunity to obtain estimates and inspect the house. Upon the happening of one of the contingencies listed above, the house is to be sold and Barbara and Michael are to divide the proceeds equally.

■ Michael argues first that this is not a final property division, as required by IC 31–1–11.5–11(b), because it does not "settle all property rights with certainty." *Wilhelm v. Wilhelm* (1979), Ind.App., 397 N.E.2d 1079, 1081. On the contrary, the decree provides a final, certain date on which the property must be liquidated and the proceeds distributed, the youngest daughter's 21st birthday. Michael suggests that possible changes in the insurance premium and possible confusion or disagreement as to the necessity and cost of repairs and improvements leave the property subject to modification. He correctly argues that a property division within a dissolution decree must not be subject to modification. *Wilhelm, supra,* 397 N.E.2d at 1082. His argument fails, however, because the trial court's decree requires him to pay half the insurance premium whatever the amount, and it specifies that he must share the cost of all improvements and all repairs over $100.00, with a reasonable opportunity to obtain estimates. The decree may be open to interpretation, but it is not open to modification.

■ Michael also argues that allowing Barbara to live in the house while he is required to share the mortgage and other costs renders the entire distribution unjust and unreasonable, contrary to IC 31–1–11.5–11. To find a property division unjust and unreasonable, we must find that it has no rational basis. *Van Riper, supra,* 437 N.E.2d at 132.

With regard to property division, IC 31–1–11.5–11(c) provides:

In determining what is just and reasonable, the court shall consider the following factors:

(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

It is clear from the following findings that the trial court considered all of the statutory factors:

(2) Each party made a substantial contribution to the acquisition of the marital assets.

(3) Husband either brought to the marriage or received as a gift from his mother stock that was sold for $20,000.

(4) Husband inherited an ebony pedestal with marble top, icon, soapstove dish, oriental rug and runner, tier table, three figurines, and an antique plant stand.

(5) Husband brought to the marriage a single bed and a stereo.

(6) Wife brought to the marriage $2,000.

(7) Wife is employed full time as a teacher at a parochial high school. Her full-time employment started with the 1984 fall semester. During the summer months the wife writes intermittent articles for the South Bend Tribune for nominal income. Wife has no other independent source of income. With the wife's employment, her economic circumstances are stable but not substantial. The wife is not involved with substantial indebtedness other than the first mortgage on the family dwelling.

(8) Husband has, through his employment, a substantial income. The absence of indebtedness, other than the first mortgage, puts husband in a stable and substantial economic situation. Husband has no independent source of income.

(9) Under the parties' existing economic circumstances, the wife has need to reside in the family dwelling to provide a home for the two minor daughters.

(10) The parties did not dissipate or otherwise improperly dispose of marital property.

(11) As a full-time teacher at a parochial high school, the wife has a net monthly income of $750.00 plus her summer earnings estimated at $200.00. Her net weekly income is approximately $176.00. In wife's job situation her earning ability is limited and is substantially less than that of the husband.

(12) Husband's employment provides a substantial income. For the last eight months of 1983, he averaged $2,529.00 per month. For the first five months of 1984, he averaged $3,177.00 per month, a substantial increase over the 1983 figure. Husband's earnings are substantially greater than those of wife.

(13) The disparity in earnings and earning ability is a factor for consideration in the division of marital assets.

(14) The husband's vested profit sharing funds, $15,628.00, are to be considered in the distribution of the divisable [sic] marital assets.

(15) The parties purchased their first home in 1973. The down payment, $20,000.00, was obtained by husband through sale of stock. Husband's mother put the stock in joint names and permitted sale. The first home was sold by the parties and the proceeds were invested in the family dwelling.

(Record, at 35–36).

Michael argues that the trial court should have given more weight to the fact that the $20,000.00 down payment for the couple's first home was a gift to him from his mother, and less weight to the desirability of Barbara's living in the family home with the girls. We do not find that the trial court abused its discretion in weighing the factors as it did.

Michael contends that under the decree his interest in the family home is virtually worthless. This is not so, since he will receive half of the proceeds when the home is sold. He further argues that Barbara has been given the "lion's share" of the property, at least while she lives in the family home. He cites for support *Swinney v. Swinney* (1981), Ind.App., 419 N.E.2d 996, and *Herron v. Herron* (1983), Ind.App., 457 N.E.2d 564. His reliance on these cases is misplaced, however, since they both involved situations in which the family home was the sole or dominating marital asset. In this case, there were other marital assets worth almost $27,000.00, and the trial court also properly considered Michael's $15,685.00 profit sharing plan, obtained through his employment, in making its distribution.

Finally, Michael argues that the trial court abused its discretion in ordering him to pay one-half of the mortgage payments on the home while Barbara and the girls have exclusive possession of it. Since

Michael will share equally in the proceeds from the sale of the house, we do not find this arrangement unjust. We find no abuse of discretion in the trial court's property division.

### III.

### Decree as a Whole

■ Michael contends that even if the child support and property division provisions in the dissolution decree do not represent an abuse of discretion taken separately, their cumulative effect so favors Barbara and so oppresses him as to be an abuse. We do not agree. Neither separately nor together are these provisions against the logic and effects of the facts and circumstances before the court. While the circumstances might have justified a different settlement, we will not substitute our judgment for that of the trial court. *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41, 44. We find no abuse of discretion.

### IV.

### Visitation

■ The trial court ordered that Michael should have the right to visit the girls whenever and wherever he and Barbara deemed it reasonable, provided that Michael refrains from drinking both during and four hours prior to visitation. Michael argues that this is an unreasonable restriction on his visitation rights, and that the trial court erred in imposing such a restriction absent a finding that visitation will endanger the girls' physical health or significantly impair their emotional development. IC 31–1–11.5–24. We do not find this proviso to be an unreasonable restriction. Rather, it represents the trial court's determination as to what is reasonable, in the same way that a requirement of prior notice to the custodial parent or a specification of dates and times might be. *See Chance v. Chance* (1980), Ind.App., 400 N.E.2d 1207. Michael's contention that the proviso contravenes the parties' stipulation that visitation be reasonable fails for the

same reasons. We do not find the visitation provisions to be unreasonable.

### V.

### Attorney's Fees

Finally, the trial court ordered Michael to pay Barbara's attorney's fees on appeal. Michael was ordered to pay $2,500.00 within five days after Barbara's attorney filed with the court a certified itemization of his fees. Michael argues that this award was an abuse of discretion, because it was entered after the appeal was perfected, and because it was against the logic and effects of the facts and circumstances before the court.

■ The Second District of this court recently has held that once an appeal is perfected in a dissolution action, the entire cause is removed to the Court of Appeals and the trial court is without jurisdiction to enter an award for appellate attorney's fees. *Hudson v. Hudson* (1985), Ind.App., 484 N.E.2d 579. Although there are many cases in Indiana supporting the trial court's authority to make such an award, Judge Sullivan reasoned that these cases were improperly founded on two Indiana Supreme Court cases, *State ex rel. Reger v. Superior Court, etc.* (1961), 242 Ind. 241, 177 N.E.2d 908, and *State ex rel. Sims v. Hendricks Circuit Court* (1956), 235 Ind. 444, 134 N.E.2d 211. *Hudson, supra,* 484 N.E.2d at 581–82. In those two cases, Judge Sullivan noted, a review of the record indicates that the appeals involved were interlocutory, and the entire cause in each case had not been removed from the trial court. *Id.*

We do not agree with the Second District that *Reger* and *Sims* cannot support the proposition that a trial court has jurisdiction to award appellate attorney's fees once an appeal has been perfected. In neither case did the Supreme Court rely on the procedural posture of the matter before it. In *Sims* the court wrote:

We believe the trial court also has the inherent power to make an allowance to the wife for support and expenses, in-

cluding counsel fees, when she is forced to defend an appeal, and "it is almost universally held that, pending an appeal in a matrimonial action, the trial court has jurisdiction to allow both temporary alimony pending the appeal and suit money to prosecute or defend the appeal. * * * " Nelson, Divorce and Annulment (2d Ed.) § 12.50, p. 454. See also 27 C.J.S., Divorce, §§ 207(d), 221(b), pp. 893, 920; 17 Am.Jur. p. 444, § 557, and p. 420, § 516, p. 458, § 580.

134 N.E.2d at 212. The court did not limit the trial court's inherent authority to the period prior to perfection of the appeal.

Both cases cited with approval *Cirtin v. Cirtin* (1928), 87 Ind.App. 457, 161 N.E. 709 (overruled on other grounds, *State ex rel. Barner v. White Circuit Court* (1958), 237 Ind. 443, 147 N.E.2d 10), in which a trial court's award of appellate attorneys' fees was upheld. In *Cirtin*, this court stated:

> In this case, by a final adjudication upon the issues, a decree of divorce and judgment for alimony was rendered in favor of appellee, and when the appeal was perfected, jurisdiction as to the questions of divorce and alimony were absolutely removed from the jurisdiction of the trial court. But the matter here involved is independent of any question raised by the appeal and was not within the issues and was in no sense adjudicated. In fact, it could not have been adjudicated, for at that time there was no appeal and hence no necessity for an allowance to defend against an appeal. The appeal itself has created the necessity for the allowance to defend against the same. ... [T]he appeal does not deprive the circuit court of jurisdiction to make orders in the cause on matters that are distinct from the questions that are involved in the appeal, and especially those which are in aid of the appeal.

161 N.E. at 710. Because the award of appellate attorney's fees is separate and distinct from the issues on appeal, the perfection of the appeal does not deprive the trial court of jurisdiction to make such an award. *See also* 24 Am.Jur.2d Section 543. (Also see *Alderson v. Alderson* (1971) 274 N.E.2d 710).

■ Michael contests the award itself, as well as the trial court's jurisdiction to grant it. In determining whether such an award should be made, the trial court must consider the resources of the parties, their economic condition, their ability to earn income, and other appropriate factors. *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172, 1176. The record indicates that the trial court had evidence before it with regard to these factors. The fee award was not against the logic and effects of the facts and circumstances before the court, and was not an abuse of discretion.

We affirm.

NEAL, J., (by designation) concurs.

GARRARD, J., dissents in part with opinion.

GARRARD, Judge, dissenting in part.

I concur with the majority's disposition of all the issues presented except that of child support. Concerning support for the two daughters of the parties, the Commissioner found there were monthly expenses for the children of $798 which represented a weekly expense of $223.

Apart from the obvious mathematical error in this finding, it is simply not sustained by the evidence. The wife testified to monthly household expenses as follows:

| | |
|---|---|
| Mortgage and taxes | $530 |
| Insurance | 25 |
| Electric | 60 |
| Gas | 90 |
| Telephone | 30 |
| Garbage collection | 8 |
| Food | 280 |
| Total | $1,023 |

Of this sum the husband was separately ordered to pay half the mortgage and insurance ($277.50) leaving a monthly balance of $745.50. Two-thirds of this amount, or $497.67, is attributable to child support.

In addition there were expenses for the daughters to attend parochial school, but the husband was ordered to pay these separately. There was also evidence that about $700 per year was expended on clothing for the girls, or an additional $58.34 per month.

Dividing the total monthly expenses thus obtained ($555.34) by 4⅓ weeks per month results in a weekly support figure of $128.16. That figure is so far removed from the $223 per week found by the court that one is left with the firm conviction that the court's figure is clearly erroneous.

I would therefore reverse the determination of child support and remand for further proceedings.