Cecelia N. LORD, Appellant
(Petitioner Below),

v.

Maurice P. LORD, II, Appellee
(Respondent Below).

No. 4–682A157.

Court of Appeals of Indiana,
Fourth District.

Dec. 15, 1982.
Rehearing Denied Jan. 25, 1983.

John P. Price, D. William Moreau, Jr., Indianapolis, Courtney B. Justice, Delphi, for appellant.

Charles R. Vaughan, Charles Max Layden, Vaughan, Vaughan & Layden, Lafayette, for appellee.

YOUNG, Presiding Judge.

Cecelia N. Lord appeals from the judgment of the Carroll Circuit Court dissolving her marriage with Maurice P. Lord, II. Cecelia contends that the trial judge erred in awarding joint custody of their children, in making a division of marital assets, and in fixing inadequate child support.

We reverse in part and affirm in part.

Cecelia and Maurice Lord were married August 24, 1968. Two children were born of the marriage, Maurice, III and Andrew. At the time of the decree the children were 11 years old and 7½ years old, respectively. Cecelia petitioned for dissolution of their marriage on November 26, 1980, and the decree of dissolution was entered on December 4, 1981.

Cecelia first complains the dissolution statute makes no provision for "joint" custody [1] and, thus, the trial judge's award

1. As was noted in *In re Ginsberg,* (1981) Ind. App., 425 N.E.2d 656, n. 1, the "joint custody" term and others are frequently confusing. Joint custody involves both parents sharing responsibility and authority with respect to the children. *Id.* Custody contemplates not only physical custody, but also "legal" custody or decision making authority over the child's upbringing, including his education, religious training and health care. *See* Ind.Code 31–1–

of custody to both parents was contrary to law. Maurice argues a trial judge, not specifically forbidden to award joint custody by statute, may do so in the best interests of the children. However, Maurice fails to point out any precedent for that position. Although the arrangement may have merit, we fail to find any statutory authority or case law construing the dissolution act which would permit it in this case. *Cf.* Cal.Civ.Code § 4600.5(a) (Supp.1981); Iowa Code Ann. § 598.21(1)(b); Mich.Comp. Laws § 722.26a (Supp.1981); Or.Rev.Stat., Ch. 107, § 105 (1981 Replacement); Wis. Stat.Ann. § 767.24(1)(b) (1981). Ind.Code 31–1–11.5–1 *et seq.* speaks in terms of "custodial" and "non-custodial" parents. Ind. Code 31–1–11.5–21 provides in part:

(a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, community; and

(6) the mental and physical health of all individuals involved.

(b) Except as otherwise agreed by the parties in writing at the time of the custody order, *the custodian* may determine the child's upbringing, including his education, health care, and religious training, unless the court finds, after motion by a non-custodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired. (Emphasis added.)

Nothing in the statute suggests a joint custody alternative without a written agreement between the parties. Ind.Code 31–1–11.5–21(b).

■ Maurice contends that it is absurd to deprive the trial court of the joint custody option in view of the "best interests of the child" standard. We disagree. It is not this court's function to provide an alternative not implicitly or expressly provided by the legislature. *See Taylor v. Taylor,* (1982) Ind., 436 N.E.2d 56. Contrary to what Maurice argues, the fact that a court can award custody to a third party[2] does not suggest that the court may award custody jointly to two *competing* parties. The words used in the statute demonstrate that the legislature has determined that when a court is faced with two parents competing for custody, the court must appoint only one to be the custodial parent. The joint custody provision of the decree is contrary to law and must be reversed. The trial court must award custody of the children to either the father or the mother as it determines to be in the best interests of the children.[3]

11.5–21(b). In joint custody arrangements parents necessarily share responsibility in the making of major decisions affecting the child's welfare, as well as the physical custody in the sense that each is entitled to the companionship of the children over periodic intervals of time. *See Annot.,* 17 A.L.R. 4th 1013, at 1015, n. 1. Practically speaking, we recognize that the non-custodial party must have some residual authority over discipline and health care when he or she has immediate physical control over the child; however, the primary authority must reside in the custodial parent.

2. If neither party is fit to be custodian, a trial court can award custody to a third party. *Franks v. Franks,* (1975) 163 Ind.App. 346, 323 N.E.2d 678.

3. In addition, the court should provide visitation for the non-custodial parent unless it finds, after a hearing, that visitation might endanger the child's physical health or significantly impair his emotional development. Ind.Code 31–1–11.5–24. The trial court's finding that the parties should "reasonably agree" to continue the same visitation arrangement as occurred during the time of separation is not an entry of an order providing for visitation.

Cecelia next complains the trial judge failed to divide the marital assets in a just and reasonable manner. She initially asks us to find, as a matter of law, that the 77%–23% disproportionate division of marital property is an abuse of discretion.

The division of marital assets is a matter within the sound discretion of the trial court. *Temple v. Temple,* (1982) Ind. App., 435 N.E.2d 259. The statute directs the court to divide the property in a just and reasonable manner and provides certain factors to be considered. Ind.Code 31–1–11.5–11(b). It does not require an equal division of the property. *In re Marriage of Church,* (1981) Ind.App., 424 N.E.2d 1078. Thus, on appeal, we review the award only for an abuse of discretion to determine if the division is clearly against the logic and effect of the facts and circumstances before the court. *Temple, supra* (citing *Irwin v. Irwin,* (1980) Ind.App., 406 N.E.2d 317.) We do not substitute our judgment for that of the trial court's. To be set aside, there must be a showing that there is no rational basis for the court's action. *Hasty v. Hasty* (1981) Ind.App., 427 N.E.2d 1119. In this decision we do not weigh the evidence, but consider only the evidence in the light most favorable to the judgment. *Morphew v. Morphew,* (1981) Ind.App., 419 N.E.2d 770.

The trial court divided the marital assets as follows:

**ASSETS TO CECELIA:**

| | |
|---|---|
| Treasury note | $10,000.00 |
| Certificate of Deposit | 10,000.00 |
| Two automobiles | 10,747.00 |
| Stocks and bonds | 34,902.50 |
| Farm | 40,000.00 |
| Jewelry | 29,285.00 |
| Residence (net value after mortgage) | 154,417.91 |
| Household goods | 61,795.00 |
| Payment from Dr. Lord | 54,000.00 |
| Net Assets | $405,147.41 |

**ASSETS TO MAURICE:**

| | | |
|---|---|---|
| Household goods | $ 7,410.00 | |
| Farm grain | 30,300.00 | |
| Farm Livestock | 22,024.00 | |
| Cash | 11,400.00 | |
| Cash value of life insurance | 16,026.00 | |
| Automobile | 10,700.00 | |
| Stocks and bonds of which $63,801.36 was given him prior to the marriage | 76,344.26 | |
| 160 acre farm of which 120 acres was acquired prior to the marriage and 40 acres was acquired during the marriage by a $16,000.00 down payment given him by his father. (Net value after mortgage.) | 371,702.00 | |
| Thirty percent interest in 116 acre farm acquired by purchase in 1970 with his father | 63,240.00 | |
| 315.8 acre farm inherited from his mother in 1977 (net value after lien) | 731,394.11 | |
| Dental practice and equipment | 17,480.00 | |
| Gross Assets | | 1,358,020.37 |

**LIABILITIES TO MAURICE:**

| | | |
|---|---|---|
| Payment to Cecelia | 54,000.00 | |
| Personal notes | 26,000.00 | |
| | | 80,000.00 |
| Net Assets | | 1,278,020.37 |

Cecelia does not cite authority from the statute or from cases that would permit us to find a specific percentage disparity to be *per se* unreasonable. Neither can we say, given our standard of review, that the division of marital assets here was so unfair and unreasonable or illogical as to be an abuse of discretion.[4] From the findings and

---

4. We recognize that this standard is imprecise. The exercise of discretion should be governed by standards and procedures aimed at securing a more meaningful appellate review. Guidance should be given to the trial judge by not only specifying the factors which are important, but the range of choice within which the trial judge may properly act. The General Assembly has provided some direction by Ind.Code 31–1–11.-5–11; however, the range of choice remains limitless. As an example of a limited range of choice, our prior "fault" divorce statute authorized alimony "as the circumstances of the case shall render *just* and *proper.*" Burns-Anno. Stat. 3–1217. In taking judicial action, case law required the trial judge to consider a number of factors: (1) the existing property rights of the parties; (2) the amount of property owned and held by the husband and its source; (3) the financial condition and income of the parties and the ability of the husband to earn money; (4) whether or not the wife by her industry and economy has contributed to the accumulation of the husband's property; and

evidence it is apparent the trial court did consider the entire statute [5] and undoubtedly gave varying weight to the multiple factors. The fact that the court did not give as much weight to her lack of employment and marketable skills as Cecelia felt was deserved is insufficient to establish an abuse of discretion. In our review of a division of property we pay deference to the trier of fact. The trial judge is vested with discretion. We do not weigh the evidence or substitute our judgment for that of the trial judge. *Temple, supra.* Because the division of property was not clearly against the logic and effect of the facts and circumstances before the court, we find no error.

█ Cecelia further argues that the court set aside all inherited and gift property to the respective beneficiary or donee and that such action was contrary to law. We do not find the problem found in *Wilson v. Wilson,* (1980) Ind.App., 409 N.E.2d 1169 to be present here. Unlike the court in *Wilson,* the trial court did not exclude gift and inherited property from the marital assets. The court recognized each party's contribution to the assets acquired during marriage and noted that the gifts and inheritances were not consumed or commingled during the marriage and that neither party had exercised any management over the other's gifts.

The trial judge divided the marital assets by distributing to the husband $1,358,020.37 worth of assets of which $1,162,897.11 was acquired by him through gifts or inheritance. The court gave the wife $351,137.91 in properties of which $97,422.50 had been acquired by her through gifts either prior to marriage or during marriage. An additional gift of $20,000 from Maurice's father for the couple's residence was awarded to her. In making this distribution the court found, in part, the following:

> The court finds that the property owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation in November, 1980, or acquired by the joint efforts of the parties consists of the items listed below with the fair market value set out by each item... In determining what is just and reasonable concerning a division of this property acquired during this marriage, the court has considered the contribution of each spouse, and has considered the factors set forth in I.C. 31–1–11.5–11. The court finds that the parties agreed to the role of each party during the course of the marriage; while, petitioner was not gainfully employed outside the home, it seems clear from the evidence that the parties agreed that her role in the marriage would be that of a homemaker; there was some evidence that during the last year of the marriage she refused to do cooking, laundry and other homemaking chores, but the court finds that during the balance of the marriage she did in fact perform those chores as homemaker, ... The court finds that the acquisition and contribution of each party to the marriage was by agreement, was joint, and that the parties should share jointly

(5) the separate estate of the wife. *Bahre v. Bahre,* (1962) 133 Ind.App. 567, 181 N.E.2d 639, 641. "Just and proper" meant that the award of alimony to an innocent and injured wife should be a sum as would leave her in as good a condition as she would have been if her husband had died and she remained a surviving widow or that the wife must have been left as well in non-cohabitation as in cohabitation. *Bahre v. Bahre, supra.* Thus, the trial judge knew the limits of his discretion and had a range of choice within which he could properly act. No such direction has been given under the current Dissolution Act. Hence, our review of the exercise of discretion in most of these cases is meaningless. Absent an error of law, we merely pronounce in conclusory terms

whether there was an abuse of discretion in the particular circumstances.

5. The trial court specifically stated that he was considering all the factors. The court indicated that Cecelia was not employed; she had contributed as a homemaker for the duration of the marriage except in the last years of marriage. The court not only recognized each party's contribution to the assets acquired during marriage but it also noted that the gifts and inheritances were not consumed or commingled during the marriage and that neither party had exercised any management over the other's gifts. It further recognized that Cecelia was responsible for some dissipation of assets.

in the assets acquired other than by gift or inheritance during the marriage. The court finds that the petitioner spent more for clothing and other personal items than was justified, even by the considerable means of the parties and that she was responsible for some dissipation of the assets of the parties; however, the evidence is not sufficiently specific to allow the court to do other than speculate as to the exact amount.

.    .    .    .    .

In summary, the petitioner is receiving by the court's award of property $44,591.70 more than the respondent from the assets acquired during the marriage other than by gift or inheritance and in addition is receiving $20,000.00 gift included in the residence. The petitioner is receiving $97,422.50 worth of gifts to her including the $34,485.50 of gifts to the petitioner before marriage, plus the $20,000.00 gift on the residence; and, the respondent is receiving property acquired by inheritance of $731,394.00 plus gifts acquired before marriage of a value of $431,503.00.

The court finds that neither party contributed to the acquisition of the property acquired prior to marriage, that the property was not consumed during the marriage and that the property still remains identifiable at the time of final separation. The court finds no evidence that either party treated those items as comingeled [sic] or exercised any particular management or proprietarial assertions concerning those items of property acquired by the other party prior to the marriage. Further, there is no evidence that either party dissipated or attempted to dispose of the property acquired prior to marriage, nor is there other evidence concerning the factors set forth in I.C. 31–1–11.5–11 other than as indicated above.

The remaining property acquired by gift or inheritance during the marriage included gifts to the petitioner of household goods in February 1980 of $22,937.00 and land in August of 1980 of $40,000.00; and gifts to the respondent in 1974 of $20,000.00 and by inheritance in 1977 of $731,394.11. In this regard, the court finds that during the last five years of the marriage, the parties became increasingly alienated and during that period were not achieving the legitimate ends and objects of matrimony. It appears that the 1974 gift of $20,000.00 was intended to be a joint gift and that the remaining gifts or inheritance came so late in the marriage that there is little evidence upon which this court can base a fair, just and equitable division of that property other than by awarding it to the donee or beneficiary.

The "one pot" theory preserved by Ind. Code 31–1–11.5–11(b) specifically prohibits the exclusion of any assets from the scope of the trial court's power to divide and award. *In re Marriage of Dreflak,* (1979) Ind.App., 393 N.E.2d 773. Here, the inherited and gift properties were included in the marital "pot" and designated as such. The trial court's findings establish that he did not exclude any assets from the property division award. Rather, he considered all gifts and inheritances, the relevant circumstances underlying the acquisition of the property, and determined that each should be awarded to the donee or beneficiary except the $20,000 gift from Maurice's father for the residence. The property division can be sustained as just and reasonable because the court's findings provide a rational basis to support it.

■ Cecelia also argues that the admission of evidence regarding the expectancy of inheritance by Cecelia from her mother was error. The court noted that the evidence of an expectancy is admissible and relevant in certain situations as an economic circumstance of the spouse. However, he expressly excluded consideration of this evidence in his decree by characterizing it as too speculative.[6] The decree recites that he gave it no consideration in making the divi-

**6.** The relevant finding states:

The court now finds that that evidence was properly admitted during the trial and the

sion of marital property. We find no evidence to demonstrate that he did anything other than what he said.

Because we reverse and remand on the child custody issue, we do not discuss the support issue as we assume the support award may be revised to reflect the new custody order.

The trial court's action regarding custody is reversed and remanded. The property division is affirmed.

Reversed in part and affirmed in part.

CONOVER, J., concurs.

MILLER, J., concurs in result.

objection goes to the weight to be given to the evidence rather than its admissibility. There was no evidence as to the health of petitioner's mother nor evidence from which the court could reasonably infer her life expectancy. There was no evidence that she had made a will, the evidence was to the contrary. The evidence considered as a whole seems *too speculative and remote to be of any value for consideration in the division of assets of the parties, and the court has not given any consideration to that evidence in making a division of the property. Such an expectancy in this case is not clearly within Ind.Code 31–1–11.5–11(b)* and *is so uncertain an occurrence that the court finds that it should not be afforded weight in the* *disposition of the assets of the parties.* The petitioner could predecease her mother, the mother could draft a will leaving all of her property to another, the governmental authorities might change the laws of inheritance or taxation so as to make the expectancy of considerably different value, et cetera. However, the court is of the opinion that evidence of such an expectancy was properly admitted under Ind.Code 31–1–11.5–11(b)(3) as an economic circumstance of the spouse. It is not too difficult to conceive of a situation where the property does not fall within the code provisions as property to be divided but nevertheless should be given some consideration by the court. For instance, . . . . (Our emphasis.)